Thank you, your honors. Matthew King on behalf of Mr. Joseph Harris, and may it please the court, I'd like to focus my arguments on the role in the offense and care and custody enhancements that were given in this case. First, with regard to the role in the offense enhancement, Mr. Harris was given a leadership enhancement, even though he lacked the intellectual capacity to perform a leadership role. And despite the fact that he didn't actually provide any leadership in this case. So first off, Mr. Harris suffers from an intellectual disability. And in order to get this enhancement, one must have the necessary influence and ability to coordinate another's behavior. And there's a requirement for some degree of control and organizational authority over others. So Harris lacks the intellectual capacity to organize. He has extremely low intelligence. He had a full scale IQ in 2018 of 66 by one evaluator, 67 by another. Our expert Dr. Daniel Trauber said that it was unlikely, given Harris's cognitive deficiencies that he could one, coordinate a and lead a complex plan to Dr. Trauber. Counsel, how complex does it have to be if he directed the child's mother to take photographs or how to take photographs or if to take photographs? And I know you don't necessarily concede that that's a permissible inference. But if it were a permissible inference that he asked or directed her to take photographs, wouldn't that be sufficient, even though it's not complicated? I suppose that might be sufficient if he's making that suggestion, Your Honor. The problem is we don't have evidence of that in this case. We don't have clear evidence that he was directing her to take photos in this particular case. The fact is that with his low IQ, Mr. Harris was more likely to be a follower as opposed to a leader. But there's evidence that he abused the child when the mother wasn't present. So why couldn't the district court infer that it was his idea and that he took the initiative? I think, Your Honor, because that inference has to be based on something and we simply don't have... Well, that's what I'm asking you because the mother was not present, for example, when your client took nude photographs of the child. So isn't it a permissible inference that it was his idea that he was the instigator of at least some, if not all, of the activity? I don't know that it's permissible, Your Honor. I mean, we have one instance where there is evidence that Mr. Harris was alone with the child on one occasion in the home with the mother present in a different room of the home. I just don't think that's enough to make this leap that I think has been made here. So our sentencing judge, he actually recognized the problem of applying this enhancement to someone like Harris. Judge Wendell actually said, Mr. Harris's limited mental capacity somewhat undermines the idea that he could organize a relationship or organize a joint activity that would justify the enhancement. And then he gave him the enhancement. The difficulty I have here is, you know, we have kind of in some cases what I'd call parallel activity going on, activity by him and then activity by Evans. But one of the things that the government argues is that there was control by making this list of people to sleep with. Does that fall within the leader enhancement? I don't think so, Your Honor. With this particular case, we have lists being made by both parties. So there was these, there's these incredibly graphic notes that are being passed between Mr. Evans, or excuse me, Mr. Harris and Ms. Evans. And they're both making lists about what they'd do. And it's incredibly inappropriate conduct. So I don't know that I would agree with the court that there is parallel conduct occurring here. But I just don't think that a leader emerges. So that's really my question. If there's parallel conduct occurring, and one person is not directing the other to do it, do you have a leader enhancement? I don't think so, Your Honor. I don't think so. Judge Windmill, when he analyzed this, he cited a couple of cases. Out-of-circuit cases. One was Plunk from the Sixth Circuit. One was Ramos from the Fifth Circuit. Both of these are drug cases. Both were based on conduct occurring over an extended period of time. Both involved recruitment, actual recruitment of co-defendants. In Plunk, for example, I mean, this is one that Judge Windmill had a, he had something going here by looking at this one because Plunk had an IQ of 52. Not too far off from what Mr. Harris had. But Plunk, with the assistance of counsel, stipulated in a plea agreement to a leadership enhancement. On top of that, Plunk was a drug supplier. He eventually became a co-defendant, excuse me, a co-conspirator along with his partner in this trafficking business. He recruited his co-defendant to obtain rental cars and drive him around and eventually deliver heroin for him. I just think that one's different. Ramos, that case talks about a client or a defendant with limited intelligence. It's not clear what his IQ was. It's not clear what that really means. But in that case, again, we have some facts that substantiate the application of enhancement he negotiated. Counsel, before you run out of time, did you want to discuss the other enhancement? Yeah, I probably ought to move that. Thank you, Your Honor. Moving to that second enhancement, we have this care and custody enhancement. Our contention here is that there was no leading or directing, excuse me, sorry, Your Honor. Our contention here is that the victim in this case was not in Harris's custody care or supervisory control. The evidence before the court did not support the application of this enhancement. So the evidence that's being relied upon by Judge Windmill and by the government here is that one, Harris and co-defendant Evans cohabitated for a few weeks because the victim called Harris dad when the police showed up. That supported the enhancement. And because Harris admitted that he disciplined the child on one occasion. And so what is the relevance of the length of time in the following sense? Suppose that they had adopted this child six weeks, eight weeks, two days, the person would still be in a parental role. So the fact that they were cohabiting and that the child called him dad, doesn't that permit the inference that the court drew? Well, we have a limited period of time. Okay. We've got five to eight weeks. No one's really sure how much time there was. We've got them living in this small trailer with Evans' mother. The problem is we have Evans telling the police that she never left the victim alone with Harris. But we know that's not true because we know, for example, that defendant, your client took pictures of this child when the mother was not present and that the mother didn't know about what the child referred to as the second game, which also permits an inference that she wasn't always present when your client and the child were together. Well, your honor, we have, I think one instance that is justified by my client's statement as he was alone with the child. He took pictures of the child or took a photo of the child, but we don't have any evidence that the mother entrusted the victim to the defendant. I think that's something the court has to look at. The question is, what does caretaker mean? It has to have some meaning beyond being there. I mean, because otherwise a visitor could be a caretaker or a guest in the trailer could be a caretaker. So what do we look to, to get some legitimate parameters of the word caretaker? Well, I think, I think you have to look at this notion of a parent entrusting the child to another, and I don't think we have any evidence of that in this particular case. In fact, we have, we have evidence that she supplied, evidence supplied to the police officer suggests that she never entrusted the child to the defendant. So apart from that, your honor, my time is, my time is short here. We contend that the government failed to meet its burden to prove that the minor was in the care, custody, or supervisory control of Mr. Evans at any point, Mr. Harris at any point in time, and we'd ask the court to reverse and remand. Thank you, counsel. We asked a lot of questions, so you may have a minute for rebuttal when the time comes. Thank you, your honor. And we'll hear next from the government. May it please the court. Good morning, your honors. My name is John Schertz. I'm an assistant United States attorney from the district of Idaho, and I represent the government in this matter. This court should find in favor of the government for two reasons. First, the district court properly imposed the two sentencing enhancements in this case. It was well within its discretion when it did so. And second, it properly weighed the 18 U.S.C. 3553A factors when imposing this below guideline sentence. Therefore, the overall sentence was reasonable. I'd like to start on the question of whether a reasonable inference can be drawn for the enhancement involving whether the defendant was capable of influencing another in this case. This inference can be drawn from many places in the record. The first of that was in the PSR on paragraph 21, which details the actual encounter of when the photograph was taken. That paragraph shows that the defendant was the one acting for his own sexual gratification in this matter, but he was the one who initiated the sexual conduct. And that after Ms. Evans had taken the photograph, she actually asked the defendant to delete that picture, which he did not as it was later found. A reasonable inference from that conduct shows that he was the person who was leading this photograph to be taken. In addition to that, your honors, the reasonable inference can also be drawn from the lists in the PSR. There's a detailed list on paragraphs 9 and 10, which the court in this case was well within his discretion when it made that reasonable inference that the defendant was a person who was the driving force behind the sexual activity taking place here. In addition to that, Mr. Shirk, in the district court made reference to a suggestion that Harris directed Evans to take the photographs. Where is the citation in the record to that? I see it in your sentencing memorandum where you don't have a citation, but is there a foundation in the record for that? Yes, your honor. That is from the PSR paragraph 20 and 21. And that suggestion comes from how the encounter was described by Ms. Evans to the police. And so when doing that, although there's nothing in paragraph 21 that says Harris handed Ms. Evans a phone and said to take the photograph, but from the actual language of that paragraph, the inference can be drawn. And the court did draw it in this case. And the government argued it was reasonable that he was the one who, at that point, initiated the sexual contact with the victim. And then the co-conspirator took the photograph. How does that square with the application note when you talk about leader and it says, paraphrasing, that merely suggesting committing offense would not put you in the leader category? Your honor, I think that's squared for a couple reasons. I think it goes to the point of whether the defendant actually had some control here. And although the court may have used the word suggestion, it combined the fact of the photo being taken with other facts in this case. One of them was the discussions that the defendant was having where he was wanting to have sex with the child. In addition, a combination of this was the notes, your honor, the lists that were made detailed on the PSR on paragraphs nine and 10. They are lengthy, but in those, you see where the defendant is the one who is the driving force behind that. And one of those comments in those notes is how he wants to be the person who wants to have sex with not only the co-conspirator, the co-conspirator's mother, as well as the victim in this case. I think those combined with the fact that how the actual photograph of the oral rape was taken in combination with the fact that the defendant had also... Can I just ask you about that? I hear what you're saying, but it doesn't seem to me those notes make him... He's saying what I would like to do, meaning the defendant. I'm not sure how that promotes him to being a leader. Your honor, I think it's a part of what promotes him to be a leader. And when he's sitting down with the co-conspirator and he's writing notes saying how he wants to have sexual intercourse with his co-conspirator's child, and he lives in that home with that child, and then he acts upon those feelings and actually does have... Does orally rape the child and has a photograph being taken of it. I think that is what takes this case from maybe a mere fantasy to somebody who's actually having this role where he's leading to what was ultimately the commission of the offense. When the defendant was also interviewed, he talked about these notes and admitted that he he makes a claim that the court didn't find. He's claimed that he wanted this to be when the child was 16 years old, but that really wasn't the case. It was when the child was actually living in the home. So he had this in his mind. Admittedly, this wasn't a complex scheme of any sorts, but the government argues that it doesn't have to be given the nature of the crime. Production of child pornography is not an overly complex crime. In this case, it happened quite quickly. I think to your honor's point, in addition to that, the defendant not only just had that one photo taken, but there's also the second photo that he took by himself, which was a sevious exposition of the child's genitals. Would you counsel again, before you run out of time, would you deal with the other enhancement as well? Yes, your honor. The judge was, the district court judge was well within his discretion applying 2G 2.1. Here it applies to a parent, relative, or legal guardian, but the note in note 5A in the comments says it's intended to have a broad application and it's been applied in the past to teachers, daycare workers, and babysitters. And so the court relied on two really main facts, the length of the cohabitation in this case for approximately five to eight weeks, along with the familiarity which can be shown by the victim's description as calling the defendant dad. This is only further, this enhancement is only further justified by the fact that at some point the defendant, by his own admission, had disciplined the child in the past. That's found in the PSR in paragraph 43. You know, I have a question about this. This seems a very thin record to label him as a caretaker and it seems that it's very similar to that case out of the 8th circuit of United States v. Blue. There, the victim actually considered the person to be the grandfather and they, you know, they lived together. But the court did focus on the fact care was never really transferred to that person. And so it seems to me that the fact that someone would discipline somebody is not necessarily indicia of care being transferred. I mean, we've all been in situations where even other people's children are there and we may impose some kind of order and discipline given what's going on. So that can hardly be a transfer of custody and care. How is this case distinguishable from the Blue case? I think on your point, your honor, to whether care and how discipline focuses in here, I think it's in combination with the fact that he was living in the household at the time. I think that is one of the distinguishing factors in this case, that he was actually in the household. There's so much familiarity. She was calling him dad and he was disciplining her. That was true in Blue too. They lived in the house of the grandfather. Yes, your honor. I think the one further point I would point to, even though the victim's mother, the co-conspirator in this case, says that the child wasn't left alone with the defendant, those were the first two interviews. She was interviewed a third time and in that third she found them alone in the bedroom and that's when the Lascivious Exposition, the genitals photograph was taken. That also doesn't seem to me that if you're living in the same house and you're in a different room, I don't see that as saying that you all of a sudden are the caretaker of the child. So is there support for that approach in any case? No, your honor. There's four main factors together. It shows that the court was well within its discretion. And without it, if the court has any further questions, we'd rest on a brief and ask that you affirm the sentence in this case. Thank you, counsel. And there's one minute should be on the clock. Excellent. Rebuttal. Your honor, I would say with regard to the first enhancement, the graphic notes that counsels referred to, these notes that are passed between Harris and Evans, they contain both their handwriting. You review a record of these notes, a leader does not emerge. With regard to the care and custody enhancement, your honor, it is a very thin record and that our contention is too thin in this particular case to allow the application of this enhancement based on the facts that Judge Winwell took into consideration. So we'd ask the court to reverse their man. Thank you, your honor. Thank you, counsel. The case just argued is submitted and we appreciate very much helpful arguments from both of you.
judges: McKeown, Graber, Paez